**G.E. Paul COLLINS, et al.,**

v.

**GULF OIL CORPORATION, et al.**

**Civ. No. B–83–542 (PCD).**

United States District Court,
D. Connecticut.

April 11, 1985.

Andrew D. Painter, Abate & Fox, Stamford, for plaintiffs.

Albert Zakarian, Felix J. Springer, Day, Berry & Howard, Hartford, Conn., for defendant.

## RULING ON DEFENDANTS' MOTION TO DISMISS

DORSEY, District Judge.

This action, under numerous contract and tort law theories, stems in essence from an alleged breach of an employment contract. Defendants, Gulf Oil Corporation (Gulf) and Transinsco, Inc. (Transinsco), have moved to dismiss the fourth, eighth, ninth, tenth, fourteenth, eighteenth, nineteenth and twentieth counts of plaintiffs' second amended complaint (complaint), pursuant to Rule 12(b)(6), Fed.R. Civ.P., for their failure to state a claim upon which relief can be granted. With the introduction of facts outside the pleadings,[1] defendants' motion to dismiss the fourth and fourteenth counts must be considered as one for summary judgment. Rule 12(b), Fed.R.Civ.P.; *Modern Woodcrafts, Inc. v. Hawley,* 534 F.Supp. 1000, 1002 n. 1 (D.Conn.1982); 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1366 at 679 (1969 Ed.).

Plaintiffs' failure to dispute these facts [2] permits their consideration in relation to plaintiffs' allegations and in determining defendants' claim to judgment as a matter of law in relation to the fourth and fourteenth counts. Rule 56, Fed.R.Civ.P. The inquiry into the remaining six counts is limited under Rule 12(b)(6) to the factual allegations therein, construed in the light most favorable to plaintiffs with all well-pleaded material facts taken as true. *Frey Reddy-Mixed Concrete v. Pine Hill C.M.,* 554 F.2d 551, 553 (2d Cir.1977); *Gumer v. Shearson Hammill & Co.,* 516 F.2d 283,

---

**1.** *See* Defendants' Memorandum in Support of Motion to Dismiss, n. 3 at 8–9, n. 4 at 20.

**2.** *See generally* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss.

286 (2d Cir.1974); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 231 (2d Cir.1974), *aff'g*, 353 F.Supp. 264, 268 (S.D.N.Y.1972).

*Facts—Uncontested or Pleaded*

From 1978 through 1982, plaintiff G.E. Paul Collins (Collins), a citizen of the United Kingdom, was an insurance accountant at Insco, Limited (Insco), a Bermuda-based "offshore" insurance subsidiary of defendant Gulf, a Pennsylvania corporation. On or about May 17, 1982, Gulf sponsored Collins for an intra-company transfer and an "L–1" visa and his wife, Gerda Louisa Augusta Collins (Gerda), a citizen of Belgium, for a non-working "L–2" visa for purpose of Collins' transfer to Transinsco, a Gulf subsidiary incorporated and doing business in Connecticut. Collins' assignment as Transinsco's Director, Systems Development, was not to exceed three years, following which he would return home or be reassigned elsewhere. In reliance upon Gulf's representations concerning the duration of his Transinsco assignment and a future reassignment, Collins relocated his family to Stamford, Connecticut, on or about July 1, 1982. During his employment at Transinsco, his supervisor, Clyde Hayden (Hayden), failed to evaluate Collins' performance in conformance with the established Gulf practice. In particular, Hayden wrote a memorandum to the file recording a December 17, 1982, meeting between himself and Collins wherein he criticized Collins' performance. On May 20, 1983, Collins met again with Hayden and received a copy of this memorandum, whereupon he learned that a performance evaluation had occurred.

Collins asserts that Gulf violated the federal immigration laws by representing on his visa application that his assignment would extend for three years and that he would be given a level of responsibility which he never received. He also alleges that during his stay at Transinsco, funds due Insco were illegally concealed by Hayden and another Transinsco employee and used by Transinsco, thereby conferring an unfair competitive advantage upon Transinsco. He further asserts that from May 1982 to June 22, 1983, Gulf and Transinsco violated §§ 38–69, *et seq.*, Conn.Gen.Stat., and its consent decrees with the Securities and Exchange Commission by failing to obtain "agent" or "broker" licenses. By virtue of his accounting position, Collins asserts he was placed in the position of being an accessory to these illegal acts and when he became a threat to covering them up he was terminated on or about June 30, 1983, effective July 31, 1983. As a result of his discharge, both his and his wife's visas were revoked.

*Discussion*

**A. Fourth and Fourteenth Counts**

In the fourth and fourteenth counts of the complaint, respectively, Collins alleges that defendants intentionally and negligently inflicted great emotional distress upon him and his family in sponsoring his visa; failing to comply with established performance evaluation procedures; representing that his assignment would extend three years; and terminating his employment with the knowledge that it would result in the automatic revocation of his visa.

**1. Intentional Infliction of Emotional Distress**

A claim for intentional infliction of emotional distress lies against:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another ... if bodily harm to the other results from it [as well as] for such bodily harm.

*Hiers v. Cohen*, 31 Conn.Supp. 305, 308, 329 A.2d 609 (1973), citing Restatement (Second) of Torts, § 46(1) (1965).

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community ....

Restatement (Second) of Torts, § 46, Comment d (1965).

Defendants urge that plaintiff's claim must fail as he has not alleged any

facts from which "extreme and outrageous" conduct could be inferred. Defendants underscore this by pointing out that, even in nearly 500 pages of plaintiff's deposition, plaintiff failed to show that his termination was conducted in an egregious or unconscionable manner, but testified only to what he considered improper motives for defendants' conduct.

Plaintiff neither disputed defendants' claims nor introduced evidence from which outrageous or extreme conduct may be inferred. Rather, plaintiff merely labels defendants' conduct as "outrageous and extreme" and argues that the facts of this case are so extraordinary that reasonable people will differ as to whether or not defendants' conduct was, in fact, outrageous.[3]

Prior to *Murray v. Bridgeport Hosp.*, 40 Conn.Sup. 56, 480 A.2d 610 (1984), courts in Connecticut did not recognize the tort of intentional infliction of emotional distress in the employment context. In *Murray*, the Superior Court denied an employer's motion to dismiss a claim of intentional infliction of emotional distress in defendant's failure to evaluate plaintiff, holding that whether or not the failure to evaluate was extreme or outrageous conduct was a question of fact. This holding, contrary to the general rule, fails "to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Restatement (Second) of Torts, § 46, Comment h (1965); *Wells v. Thomas*, 569 F.Supp. 426, 433 (D.Pa.1983). Extension of this tort to an employment contract dispute on facts much more egregious than those in the instant case has been resisted.

*Wells; Waldon v. Covington*, 415 A.2d 1070 (App.D.C.1980).[4]

Assuming, *arguendo*, that the tort of intentional infliction of emotional distress should be recognized in the employment context, whether defendants' conduct was extreme or outrageous under the facts of the instant case as a matter on which reasonable minds can differ, requires determination by the court in the first instance. In light of the commonly accepted meaning of "extreme and outrageous conduct," plaintiff's claim fails for he has not introduced facts from which a jury would be permitted to infer that defendants' conduct was extreme or outrageous.

### 2. Negligent Infliction of Emotional Distress

■ Connecticut has not yet recognized the tort of negligent infliction of emotional distress in the employment context. For the tort to lie, in general, however, plaintiff must show that defendants should have realized that their conduct involved an unreasonable risk of causing distress and from the facts known to them should have realized that the distress, if it were caused, might result in illness or bodily harm. *Urban v. Hartford Gas Co.*, 139 Conn. 301, 93 A.2d 292 (1952); *Bertozzi v. McCarthy*, 164 Conn. 463, 323 A.2d 553 (1973); Restatement (Second) of Torts, § 313. As in the tort of intentional infliction of emotional distress, a plaintiff need not show actual physical harm or injury, so long as defendant's conduct involved an unreasonable risk of causing distress resulting in illness or bodily harm. *Montinieri v. SNET Co.*, 175 Conn. 337, 398 A.2d 1180 (1978).

■ Defendants argue that plaintiff fails to state a claim since the degree of anxiety

---

**3.** Plaintiff's arguments that he was not an "at-will" employee and the highly dubious assertion that this was not an employer-employee relationship but a parent-child relationship has no bearing on this claim.

**4.** In *Wells*, the court granted summary judgment in the face of allegations that the employee was stripped of her position, placed in a newly-created position with no responsibilities, her office was taken away, her secretary was reassigned to someone else, she was given poor performance evaluations where for twenty-five years she had only received excellent ratings, she was not given annual salary increases and finally she was terminated, all allegedly without cause. In *Waldon*, the court affirmed a dismissal where plaintiff claimed that her husband's death was due to defendants' failure to give him notice of meetings, threat to institute actions to determine his competency to teach and assignment to teach classes out of his specialty. *See also, Cautilli v. GAF Corp.*, 531 F.Supp. 71 (D.Pa.1982).

arising from termination of employment is not sufficiently high to meet this standard. Defendants, perhaps with tongue in cheek, point out that the only physical problem suffered by Collins as testified to in his deposition was a digestive condition consisting of "burping" which predated working at Transinsco. Plaintiff has not disputed this fact nor introduced any evidence from which it can be inferred that defendants' conduct was so egregious that it should have realized that it involved the unreasonable risk of causing emotional distress. *Montinieri* at 337, 398 A.2d 1180. In essence, plaintiff would have us hold that any time an employer does not comply with performance evaluation procedures and terminates an employee that it has negligently inflicted emotional stress. Such is not the law.

Summary judgment is granted to defendants as to the fourth and fourteenth counts.

### B. *Eighth and Eighteenth Counts*

In the eighth and eighteenth counts, directed against Gulf and Transinsco, respectively, Collins alleges violations of the Connecticut Unfair Trade Practices Act, §§ 42–110a, *et seq.*, Conn.Gen.Stat. (CUTPA), by their failure to obtain insurance licenses as required by Connecticut law; misuse of funds due Insco; violation of a consent decree with the Security Exchange Commission.

Primarily at issue here are §§ 42–110b and 110g(a). Section 42–110g(a) states

Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by § 42–110b, may bring an action ... to recover actual damages ....

Connecticut Acts 467 (1984) (P.A. No. 84–468) added: "Proof of public interest or public injury shall not be required ...." Section 42–110b states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

To sustain a CUTPA claim, plaintiff must show that he was a direct victim of defendants' unfair practices. *Murphy v. McNamara*, 36 Conn.Sup. 183, 416 A.2d 170 (1979). Although the Act does not facially exclude employment contract disputes, this court has dismissed a CUTPA claim where plaintiff alleged loss of money or property as a result of a retaliatory discharge based on plaintiff's objection to the employer's unfair practices since this was "but an indirect, remote relationship," not governed by CUTPA. *Troxler v. Hartford Ins. Group*, Civil No. H–80–298 (D.Conn.1981), 7 Conn.L.Trib. No. 22 at 7. Plaintiff vainly asserts that his loss and injury were the direct and proximate result of defendants' illegal acts and would distinguish *Troxler* by arguing that his situation is somehow different since defendants also allegedly violated the federal immigration laws. The court finds that *Troxler* controls as the relationship between plaintiff's loss and defendants' unfair practices is too remote to sustain plaintiff's claims.[5]

Therefore, defendants' motion to dismiss the eighth and eighteenth counts is granted.

### C. *Tenth and Twentieth Counts*

The tenth and twentieth counts, as against defendants Gulf and Transinsco, respectively, allege Gerda's loss of consortium due to her husband's emotional strain and trips abroad to seek employment.

"[E]ither spouse has a claim for loss of consortium shown to arise from a *personal*

5. It is, therefore, unnecessary to address either the argument that defendants' practices violate CUTPA under *Murphy's* three-prong test, or the issue of whether the recent amendment, 1984 Public Act 468, which eliminated the "public interest nexus" imposed by *Ivey, Barnum & O'Mara v. Indian Harbor Properties, Inc.*, 190 Conn. 528, 461 A.2d 1369 (1983), or the "public nexus" requirement of *O'Mara* controls. The question being whether the Act imposes substantive changes in the law, so as to preclude, under settled principles, its retroactive application, or merely clarifies the original CUTPA so as not to run afoul of a retroactivity bar. *See, e.g., Circle Lanes of Fairfield, Inc. v. Fay*, 195 Conn. 534, 540–41, 489 A.2d 363 (1985).

*injury* to the other spouse caused by the negligence of a third person." *Hopson v. St. Mary's Hosp.*, 176 Conn. 485, 496, 408 A.2d 260 (1979) (emphasis added). As Collins does not allege actual physical injury to have resulted from the allegedly wrongful acts of defendants, at issue here is whether his alleged emotional strain falls within the meaning of "person injury."[6]

Defendants argue that the term "personal injury" is synonymous with "physical injury" and, therefore, plaintiff's claim must fail. Plaintiff argues that *Hopson* is not so limited and cites in support *Montinieri*, where the court recognized that an action for negligent infliction of emotional distress may lie even in the absence of physical injury. Assuming *arguendo* that *Montinieri* is controlling, plaintiff has failed to show that defendants "should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress if it were caused might result in illness or bodily harm." *Id.* at 345, 398 A.2d 1180. Plaintiff's citation to *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976), where the court held that a loss of consortium claim may lie even in the absence of physical injury, is not controlling in this court, nor supportive of any discernible trend or course in which the law of Connecticut may be following.

Moreover, the Restatement (Second) of Torts, § 693, stresses the necessity of a physical harm:

> (1) One who by reason of his tortious conduct is liable to the one spouse *for illness or other bodily harm* is subject to liability to the other spouse for the resulting loss of the society and services of the first spouse ... and for reasonable expense incurred by the second spouse in providing medical treatment. (Emphasis added).

Absent a clearer signal from the Connecticut courts that a loss of consortium claim may lie without physical or personal injury, this court must grant defendants' motion to dismiss as to the tenth and twentieth counts.

## D. *Ninth and Nineteenth Counts*

■ In the ninth and nineteenth counts against defendants Gulf and Transinsco, respectively, Gerda claims negligent infliction of emotional distress.

In Connecticut, although a plaintiff need not prove physical injury or risk of harm from physical impact to recover for the negligent infliction of emotional distress, it must at least be shown that defendant "should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress if it were caused might result in illness or bodily harm." *Montinieri*, at 345, 398 A.2d 1180. Moreover, "emotional distress is a proper element of damages only when it results from the breach of a duty to the particular plaintiff." *Anonymous v. Hospital*, 35 Conn.Sup. 112, 398 A.2d 312 (1979).

Plaintiff claims that because defendants knew that her husband's discharge would result in the revocation of their visas, they had a heightened standard of care to comply with established Gulf performance evaluation procedures and their failure to do so was a breach of their duty and the direct cause of plaintiff's great emotional suffering. However, as defendants rightly point out, plaintiff's claim must fail as she has not demonstrated that the breach was of a duty owed her and not to her husband.[7]

---

6. The "argument" that both plaintiffs have complained of physical manifestations of stress and anxiety and will testify that the devastating economic consequences of the dismissal prevented them from obtaining medical attention which would have been pursued under normal circumstances is rejected. *See* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss at 30.

7. Plaintiffs' argument in their Brief in Opposition to Defendants' Motion to Dismiss that the defendants assumed a duty to Gerda merely by sponsoring her and her children's visas and that this duty included *inter alia* not to arbitrarily or maliciously terminate her husband's employment is rejected in the absence of any factual basis or legal support. Since plaintiff has failed to demonstrate that defendants owed her a duty, we need not address plaintiff's argument that defendants' conduct was outrageous and extreme.

*Anonymous; Lessard v. Tarca,* 20 Conn. Sup. 295, 133 A.2d 625 (1957).

Defendants' motion to dismiss as to the ninth and nineteenth counts is granted.

SO ORDERED.