George A. REED

v.

SIGNODE CORPORATION.

George A. REED

v.

PRODUCT IDENTIFICATION CORPORATION.

Civ. Nos. H–84–570(AHN), H–84–9(AHN).

United States District Court,
D. Connecticut.

Aug. 28, 1986.

John C. Yavis, Jr., Murtha, Cullina, Richter & Pinney, Hartford, Conn., for plaintiff.

Emanuel N. Psarakis, Robinson & Cole, Hartford, Conn., for defendant.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

In 1984, plaintiff, George A. Reed, brought these two actions against his former employer, the Product Identification Corporation ("PIC"), and its parent company, Signode Corporation ("Signode"). These actions were later consolidated. Plaintiff, who was 58 years old when he sought re-employment with defendants, claims that defendants, in failing to rehire him, wilfully discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. Sections 621–634 (First Count), and intentionally inflicted emotional distress on him in violation of state law (Second Count).[1] Jurisdiction is properly predicated on the ADEA and the statutory provisions for diversity jurisdiction.

Defendants now move for summary judgment pursuant to Rule 56(b), Fed.R. Civ.P., on both the ADEA claim and the state tort claim. The motion, having been briefed and argued, is ripe for decision. For the reasons that follow, the motion is denied on the ADEA claim and granted on the state tort claim.

### Summary Judgment

The Federal Rules of Civil Procedure provides that summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Supreme Court recently interpreted Rule 56, writing that summary judgment "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* — U.S. —, —, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, a "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at —, 106 S.Ct. at 2511. The moving party shoulders the burden of showing the nonexistence of a "genuine issue." *See Celotex Corp. v. Catrett,* — U.S. —, —, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

### Facts

The facts in this case are as follows. Plaintiff was employed by PIC, or by its parent and predecessor in interest Signode, from 1973 until March 31, 1982. During that time, plaintiff served in a managerial capacity as both general manager and vice president of the Electrocal Division and the Noble & Westbrook Division.

In 1981, plaintiff learned that he had cancer of the lymphoma. He then began chemotherapy treatment. In September 1981, plaintiff requested a one-year leave of absence. PIC informed plaintiff that

---

1. An additional count claiming that PIC's discriminatory conduct violated the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. Section 46a–60 *et seq.,* was previously dismissed by Senior Judge Clarie. *See Reed v. Product Identification Corp.,* No. H–81–9, slip op. at 8 (D.Conn. Apr. 26, 1984) (Ruling on Motion to Dismiss) [Available on WESTLAW, DCTU database].

company policy precluded such a leave and left plaintiff with the choice of continuing to work or resigning. He chose to resign, agreeing to stay until March 31, 1982, to finish his work at PIC and to train his replacement, Laurence Tymkiw.[2] Tymkiw, a Canadian citizen in his early-forties, was hired in November 1981, to permanently replace plaintiff.

While employed by defendants, plaintiff was praised for his work. Defendants reflected their opinion on his work performance by increasing his salary and awarding him maximum bonuses. *See* Plaintiff's Appendix items 1 & 2. Plaintiff left on March 31, 1982. After leaving defendants, plaintiff began to feel healthier. During August 1982, plaintiff wrote PIC, expressing his desire to return to work in a suitable position with defendants. In the fall of 1982, Reed responded to a "blind" employment advertisement in the Wall Street Journal, which turned out to be for his former position at PIC. Reed requested that PIC consider him for the job, but was informed by defendants that the advertisement was, in effect, a "dummy" advertisement placed to comply with immigration requirements which had to be satisfied before Tymkiw could obtain a permanent visa and accept permanent employment with PIC. In January 1983, Signode tranferred Tymkiw to its corporate headquarters, leaving vacant plaintiff's former position of general manager of the Electrocal Division. Between January and mid-May 1983, defendants were actively looking for a general manager of the Electrocal Division.

On March 25, 1983, plaintiff wrote to defendants' executives, renewing his desire to return to a managerial position. Defendants informed plaintiff in two letters both dated April 15, 1983, that no such positions were available. However, it appears that plaintiff's former position had been open from March through mid-May 1983. Apparently, at one point in April, defendants offered the position to David Karlyn, then age 45, who declined the offer. Defendants again placed an advertisement for plaintiff's former position in the May 3, 1983, Wall Street Journal. Reed again responded, but defendants refused to hire him.

Two men, in addition to Karlyn, were seriously considered for the job. Defendants prepared written summaries of the three candidates based on their interviews. Each summary begins with a notation as to the candidate's age. Gene Callanan was noted to be 43 years old, Andrew Walker was noted to be 38 years old, and Karlyn, according to the interviewer, appeared to be 43 years old. *See* Plaintiff's Appendix item 38. Karlyn was actually 45 years old. *See id.* item 39. Therefore, all three candidates were between 13 and 20 years plaintiff's junior. The summaries also include references to the candidates' qualifications and general remarks about each candidate. *See id.* item 38.

In mid-May 1983, defendants made a new offer to Karlyn which he accepted and he was hired as the general manager of the

**2.** A factual dispute exists as to the reason prompting the requested leave. Plaintiff argues that he requested a one-year leave "to assure himself of a brief retirement period in case the significant possibility that he would die of cancer before he could experience retirement became a reality." Plaintiff's Local Rule 9(c) Statement, para. 6. Conversely, defendants contend that the request was made "so that [plaintiff] and his wife could go sailing up and down the east coast of the United States." Defendants' Local Rule 9(c) Statement, para. 12. Similarly, a factual dispute appears to exist with respect to plaintiff's health when he resigned in March 1982. Defendant contends that plaintiff's cancer was in total remission. *See* Defendants' Local Rule 9(c) Statement, para. 11. Plaintiff

argues that his health was a question of considerable uncertainty in that there was a possibility he might suffer a relapse. *See* Plaintiff's Local Rule 9(c) Statement, para. 5.

The reason why plaintiff requested a leave of absence in 1981 or the status of his health when he resigned in March 1982, does not appear to be a material fact as to whether defendants improperly considered his age in their decision not to rehire him in May 1983. Therefore, since factual disputes over immaterial facts are not to be considered in deciding a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the existence of these factual disputes would not otherwise preclude the entry of summary judgment.

Electrocal Division. Defendants never re-hired plaintiff.

### Age Discrimination Claim

A thorough reading of the memoranda and appendices containing letters and excerpts from deposition transcripts reveals that plaintiff is entitled to present his age discrimination claim to a jury. Although defendants' motion presents a very close question whether defendants discriminated against plaintiff on the basis of his age in considering his request for re-employment, disputed material facts preclude the entry of summary judgment.

■ The ADEA prohibits an employer from treating an age-protected individual less favorably than others on account of his age. See 29 U.S.C. Section 623(a); Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 923 (2d Cir.1981). But, an employer is not prohibited from making an employment decision concerning an individual based on "non-discriminatory factors, however subjective and unsound." Haskell v. Kaman Corp., 743 F.2d 113, 119 (2d Cir.1984). Usually the ADEA is applied to prohibit an employer from discharging employees because of their age. Yet, the ADEA also prohibits an employer from unjustifiably basing its hiring decision on a job applicant's age. In both circumstances, the applicant's age motivates the employer's decision. Cf. Hahn v. City of Buffalo, 770 F.2d 12, 15 (2d Cir.1985) (discussion of ADEA in terms of an employer setting a maximum age limit for hiring an applicant seeking employment).

■ In Hahn, Judge Newman acknowledged that while "different standards might apply in determining the validity of the justification, if any, for [an employment decision based on age], depending on whether the person claiming age discrimination is an employee being discharged or an applicant seeking employment," neither the ADEA nor the case law makes such a distinction. Id. Whether that distinction should be made "is a matter for Congress." Id. Consequently, the standard for determining the validity of plaintiff's claim in seeking to be hired by defendants will be similar to the well-established standard used in determining the validity of a discharged employee's ADEA claim.

Defendants first contend that plaintiff has failed in his efforts to establish a prima facie case. Defendants argue that plaintiff has not produced evidence that they intended to discriminate on the basis of his age when they considered his request for re-employment. See Defendants' Memorandum at 13, citing Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir. 1981), cert. denied, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). Defendants' reliance on Williams, a Fifth Circuit case, as authority for the requisite elements of a prima facie ADEA case is inappropriate. In the Fifth Circuit, a plaintiff's initial burden at the prima facie stage is to offer evidence, "circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Williams, 656 F.2d at 129.

■ Unlike the more exacting Fifth Circuit standard for establishing a prima facie ADEA claim, in the Second Circuit a plaintiff establishes his initial burden by offering evidence that the defendant's employment decision creates an inference that it was based on discriminatory considerations. Nash v. Jacqueline Cochran, Inc., 548 F.Supp. 676, 679 n. 9 (S.D.N.Y.1982) (noting the difference between Fifth Circuit and Second Circuit standards for establishing a prima facie ADEA case). See Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); Meiri v. Dacon, 759 F.2d 989, 996 (2d Cir.), cert. denied, — U.S. —, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); Stanojev, 643 F.2d at 919. In an age discrimination in hiring case, a plaintiff raises this inference of age discrimination by establishing his prima facie case with proof: (1) that he was between the ages of 40 and 70 at the time of the employment decision; (2) that he applied and was qualified for a job for which the employer was seeking applicants;

(3) that he was not hired despite his qualifications, and (4) that the employer hired a substantially younger person or kept the position open to receive one. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (order and allocation of proof in a Title VII disparate treatment employment discrimination case based on race in the hiring context). *See also Meiri,* 759 F.2d 995–96; *Haskell,* 743 F.2d 122; *Stanojev,* 643 F.2d at 919–20, 924 n. 7; *Geller v. Markham,* 635 F.2d 1027, 1032 (2d Cir.1980) (approving the use of *McDonald Douglas* principles in ADEA cases), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); *Nordquist v. Uddeholm Corp.,* 615 F.Supp. 1191, 1196 (D.Conn.1985). These four elements of proof "were not intended to be 'rigid, mechanized or ritualistic.'" *Meiri,* 759 F.2d at 996, *quoting Furnco Constr. Corp.,* 438 U.S. at 577, 98 S.Ct. at 2949. Moreover, the Second Circuit has noted the nature of a plaintiff's burden of proof at the prima facie stage as relatively *"de minimis,"* especially where summary judgment is at issue. *See Meiri,* 759 F.2d at 996 n. 10.

■ With these considerations in mind, the court finds that plaintiff has presented sufficient evidence to establish his prima facie case of age discrimination. Viewing the general circumstances surrounding defendants' hiring decision, an inference may be drawn that it was based on discriminatory considerations, namely plaintiff's age.

While plaintiff, age 58, was seeking re-employment with defendants, Tymkiw, his replacement as general manager of the Electrocal Division, left the general manager position. Whether plaintiff was qualified for the position is a genuine fact in dispute. Plaintiff presented sufficient evidence that he was qualified in 1983 for the job he held in 1982.

With plaintiff's employment request pending defendants considered three candidates to fill that vacancy. There is evidence in the record that defendants ignored or intentionally overlooked plaintiff's attempts to be considered for the vacant management position. The three candidates' ages ranged from 13 to 20 years younger than plaintiff's age. The person finally hired was about 13 years younger than plaintiff. The fact that defendants considered substantially younger candidates and ultimately hired one of those candidates warrants an inference of age discrimination. *See Haskell,* 743 F.2d at 122.

■ Once a plaintiff establishes a prima facie case of employment discrimination, as here, the burden shifts to the employer to advance a legitimate, non-discriminatory reason for its challenged conduct. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Meiri,* 759 F.2d at 997. One reason is advanced by defendants for not rehiring plaintiff. Plaintiff "did not have the strong sales marketing orientation which they sought in filling the position for which [he] applied." Defendants' Memorandum at 17. Defendants argue that when plaintiff sought re-employment in 1983, they had the benefit of witnessing Tymkiw's successful marketing efforts and, therefore, they wanted someone with strong marketing skills. *Id.* at 18; Defendants' Appendix item 67.

■ An employer's business decision not to hire a person, however subjective or unsound, will not lead to a finding of age discrimination if that decision was based on legitimate factors and not age. *See Haskell,* 743 F.2d at 119; *Nash,* 548 F.Supp. at 681. A candidate's marketing skills are a legitimate consideration in an employer's hiring decision. On its face, defendants' proffered reason for not hiring plaintiff may be treated as a legitimate, non-discriminatory reason.

■ Now that defendants have offered a legitimate, non-discriminatory reason for their hiring decision, the burden returns to plaintiff to show that there are factual issues showing that defendants' reason for not hiring him was merely a pretext for discrimination. *See Meiri,* 759 F.2d at 997. The burden of proving pretext merges with

plaintiff's ultimate burden of proving intentional discrimination. This burden is met "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*, quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Plaintiff need not show "that age was the sole factor in the employer's decision" nor does he need to disprove the reason offered by the employer. *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 82 (2d Cir.1983). *See also Zebedeo v. Martin E. Segal Co., Inc.*, 582 F.Supp. 1394, 1415 (D.Conn.1984). In order to prevail on plaintiff's age claim, he is required to show that the reason proffered by defendants was "not the only reason, and that age made a difference." *Nordquist*, 615 F.Supp. at 1199. *See also Geller*, 635 F.2d at 1035 (where plaintiff presents evidence of defendant's mixed motivation, he must show that age made a difference in deciding whether the plaintiff should be employed). Conclusionary allegations of discrimination offered in opposition to a summary judgment motion are insufficient to satisfy plaintiff's burden. *See Meiri*, 759 F.2d at 998.

Mindful of the standard for granting summary judgment, the issue at the pretext stage is whether the record could support a jury verdict of age discrimination. *See Meiri*, 759 F.2d at 997. The record contains evidence which, if believed, would support findings that defendants' reason for not hiring plaintiff because he lacked marketing skills was pretextual and that plaintiff's age made a difference in their decision.

Plaintiff filed an affidavit demonstrating his extensive sales and marketing experience gained prior to and while working for defendants. *See* Plaintiff's Appendix item A. The record also contains evidence that prior to plaintiff's resignation defendants thought highly of his performance as a manager. Defendants had increased his salary and awarded him maximum bonuses

to reflect their high opinion of his success as a manager. Further evidence is in defendants' written summaries of the three candidates which begin with a notation of each candidate's age. Though these notations to age may be explained with a non-discriminatory reason, the fact that it is in the summaries adds some weight to plaintiff's claim that age was a factor in defendants' hiring decision. *See, e.g., Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 609 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). In addition, these written summaries describe the candidates as appearing to have a "high energy level, be very action and decision oriented," or having a "very aggressive management style that would 'challenge the status quo.'" Plaintiff's Appendix item 38. Plaintiff, on the other hand, was described by defendants' executive employees at their depositions as not "very aggressive in moving ahead" and "appeared to be [a] more reserved type of manager." Plaintiff's Appendix item 41.

Finally, plaintiff points to the limited sales experience of David Karlyn, who was ultimately selected for the general manager position, as evidence of the pretextual nature of defendants' reason for not hiring him because he lacked sales marketing orientation. In fact, defendants' own written summary of Karlyn states that Karlyn's strength was a "very strong technical orientation," not sales or marketing. Plaintiff's Appendix item 38, March 9, 1983, summary at 3.

Although plaintiff has the ultimate burden of proving to a jury by a preponderance of evidence that he was a victim of intentional age discrimination, the record as a whole presents genuine factual issues concerning defendants' treatment of plaintiff's request for re-employment. A jury, in weighing the evidence, might draw reasonable and permissible inferences that plaintiff's age was a determining factor in defendants' May 1983, hiring decision. Therefore, defendants' motion for summary judgment on the age claim is denied.

### Intentional Infliction of Emotional Distress

Plaintiff's second claim is for intentional infliction of emotional distress. The basis for this claim is that defendants' intentionally inflicted emotional distress on him in denying his request for leave of absence in late 1981 when he was undergoing treatment for cancer and in refusing to rehire him in 1983 when his former position was available. *See* Complaints, Count Two; Plaintiff's Memorandum at 24. Defendants have moved for summary judgment on this claim.

As jurisdiction for this state tort claim is based on diversity jurisdiction, this court must apply the substantive law of Connecticut, *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including Connecticut's choice of law rules, *Klaxon Co. v. Stentor Electric Manuf. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Connecticut's choice of law rules indicate that where an action involves alleged improprieties associated with an employment contract which had its operative effect in Connecticut, the substantive law of Connecticut applies. *Reed v. Product Identification Corp.*, No. H–81–9, slip op. at 4 (D.Conn. Apr. 26, 1984) (Clarie, J.) (Ruling on Motion to Dismiss), *citing Whitfield v. Empire Insurance Co.*, 167 Conn. 499, 506, 356 A.2d 139 (1975). *See also Burns v. Preston Trucking Co., Inc.*, 621 F.Supp. 366, 367 (D.Conn.1985).

This court, sitting in diversity, previously permitted plaintiff to proceed with this state tort claim in conjunction with his federal ADEA claim. *Reed,* slip op. at 9 (relying on *Axon v. Colonial Bancorp*, No. N–81–494, slip op. at 2 (D.Conn. Feb. 25, 1982) (Latimer, Mag.) (where the court held that the ADEA does not preempt state common-law causes of action for infliction of emotional distress arising under the same "facts [as those] giving rise to the discrimination claims"), *approved* Apr. 12, 1982 (Daly, J.)).

The Connecticut Supreme Court has recently recognized the tort of intentional infliction of emotional distress in an employment context. *Petyan v. Ellis*, 200 Conn. 243, 253–55, 510 A.2d 1337 (1986). *But see Collins v. Gulf Oil Corp.*, 605 F.Supp. 1519, 1522 (D.Conn.1985) (where a federal district court, prior to *Petyan*, questioned whether Connecticut courts had recognized the tort of intentional infliction of emotional distress in the employment context). In *Petyan*, a discharged employee sued her former employer for libel and intentional infliction of emotional distress allegedly caused by the employer's written statement in a factfinding form submitted to the state labor department. The employer submitted the form in accordance with plaintiff's application for unemployment compensation. The state court, in affirming the trial court's granting of a directed verdict and entry of judgment for the employer, addressed the merits of the emotional distress claim.

According to *Petyan*, a successful cause of action for an intentional infliction of emotional distress will lie upon plaintiff proving these four elements:

(1) [T]hat the actor intended to inflict emotional distress [ ] or that he knew or should have known that emotional distress was a likely result of his conduct;

(2) that the conduct was extreme and outrageous;

(3) that the defendant's conduct was the cause of the plaintiff's distress [;] and

(4) that the emotional distress sustained by the plaintiff was severe.

*Petyan,* 200 Conn. at 253, 510 A.2d 1337 (quoting with approval *Murray v. Bridgeport Hospital*, 40 Conn.Sup. 56, 62, 480 A.2d 610 (Super.Ct.1984), *citing Hiers v. Cohen*, 31 Conn.Sup. 305, 329 A.2d 609 (Super.Ct.1973); 1 Restatement (Second) of Torts Section 46 (1965)).

The first element that defendants acted intentionally or recklessly with respect to the infliction of emotional distress will be assumed for purposes of resolving this summary judgment motion. The second element that defendants' conduct was "ex-

treme and outrageous," however, cannot be shown in this case.

The Connecticut Supreme Court in *Petyan* adopted Professors Prosser and Keeton's characterization of extreme and outrageous conduct. "[T]he rule which seems to have emerged is that there is liability for conduct exceeding *all bounds* usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Petyan*, 200 Conn. at 254 n. 5, 510 A.2d 1337 (footnote omitted), *quoting* W. Prosser & W. Keeton, Torts Section 12, at 60 (5th ed. 1984). *Accord* Restatement (Second) of Torts Section 46 comment d (1965) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").

■ Before a claim for intentional infliction of emotional distress is submitted to a jury, the court must initially determine that defendant's conduct may be "reasonably regarded" as extreme and outrageous so as to permit recovery. Comment h to the Restatement (Second) of Torts Section 46. Only where "reasonable minds may differ" should the claim be submitted to a jury. *Id. See Collins*, 605 F.Supp. at 1522.

■ In this case, defendants' conduct may not be reasonably regarded as outrageous. No dispute exists that when plaintiff requested a leave of absence defendants had an established policy against granting leaves of absences, regardless of the reason for the requested leave. This uniform policy, and its application to plaintiff, even though he was undergoing treatment for cancer of the lymphoma, hardly exceeds "all bounds usually tolerated by decent society." Similarly, viewing the facts concerning defendants' treatment of plaintiff's request to be rehired in a light most favorable to plaintiff, defendants' conduct cannot be reasonably regarded as outrageous. In that defendants' conduct in this case is not regarded as outrageous and is not a matter upon which reasonable minds might differ, the claim will not go the jury.

■ Even if the court were to find that a jury should decide whether defendants' conduct was outrageous, plaintiff is not saved from summary judgment. Plaintiff has failed to establish the fourth element required to recover for intentional infliction of emotional distress, that is, he sustained "severe" emotional distress. The only evidence of emotional distress presented in opposition to the motion for summary judgment is plaintiff's deposition testimony. He testified that the "simple fact of not being rehired in a position you are well-qualified for and having this fact broadcast and known to all of your former associates and professional associates is distressing and implies incompetence and all sorts of things which are undesirable." Plaintiff's Appendix item 54. Plaintiff was neither treated nor did he seek medical assistance for the distress he allegedly suffered. *See* Defendants' Appendix item 78.

Based on this evidence, severe emotional distress cannot be found. Since 1984 when defendants' motion to dismiss this tort claim was denied, plaintiff has had the benefit of discovery to find support for his allegations of emotional distress. In the absence of evidence that would permit a jury to return a verdict in plaintiff's favor, summary judgment is granted in defendants' favor on plaintiff's claim for intentional infliction of emotional distress.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment as to plaintiff's ADEA claim is denied and as to plaintiff's tort claim is granted.

The parties will select a jury on September 3, 1986, at 10:00 a.m. At jury selection a trial date will be assigned. The trial date will dictate the proper filing dates for pre-trial order compliance.