David A. BOGDAHN, Administrator
of the Estate of Paul C.
Pelletier, Plaintiff

v.

HAMILTON STANDARD,
et al., Defendants.

Civil Action No. 95–30144–MAP.

United States District Court,
D. Massachusetts.

July 23, 1997.

Matthew J. Ryan, Jr., Springfield, MA, Douglas R. Winniman, Pellegrino, O'Connell & Winniman, Springfield, MA, Patrick Tomasiewicz, Fazzano & Tomasiewicz, W. Hartford, CT, for Bogdahn.

Judy S. Loitherstein, Day, Berry & Howard, Hartford, CT, for Hamilton Standard, Tom Cryer.

Jerome William Paun, Williamantic, CT, for Mark Bond.

John C. Sikorski, Robinson, Donovan, Maden & Barry, Springfield, MA, Gregg D. Adler, Gould, Livingston, Adler & Pulda, P.C., Hartford, CT, for George J. Kourpias.

## MEMORANDUM REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

(Docket Nos. 48, 49 & 52)

PONSOR, District Judge.

### I. INTRODUCTION

Before the court are plaintiff's and defendants' objections to the Report and Recommendation of Magistrate Judge Kenneth P. Neiman regarding the defendants' motions for summary judgment. The Report recommended granting all the defendants' motions, except the one directed at the count for intentional infliction of emotional distress against defendant Cryer. The court will decline to adopt the recommendation as to this claim against Cryer, but will adopt the remaining parts of the Magistrate Judge's recommendation, and thus allow summary judgment on all claims.[1]

### II. FACTUAL AND PROCEDURAL BACKGROUND

Before laying out the facts that underlie the court's decision, it is necessary to comment on one factor that has handicapped plaintiff's case and bedeviled the court's attempts to analyze it from the start: plaintiff's counsel's often baffling wayward performance. The Magistrate Judge aptly characterized the complaint, which went through three amendments, as "a moving target ... cloaked in confusing characterizations." Report at 8. Even the final complaint, denominated the Second Amended Complaint (Dkt. No. 34) is amateurish, lacking a clear designation, set forth in counts, of the specific theories plaintiff asserts.

Indeed, the impression the court receives from counsel's conduct is of an attorney wandering through a legal maze, hoping to stumble onto a viable theory. Even after the

---

1. Defendant McGarry was defaulted at an early stage of this litigation. The claims against him will be referred to the Magistrate Judge for a conference regarding further proceedings.

motions for summary judgment were filed, plaintiff's counsel continued these attempts to reframe the causes of action in the hope of latching on to something that would work.

Homophobia is despicable. But indignation, even outrage, is no substitute for crisply drafted pleadings and thorough knowledge of the applicable law and the Local Rules of this court. A white hat is not a free pass.

Nowhere is counsel's floundering more obvious, or more damaging, than in his handling of the factual record that provided the anchor for the Magistrate Judge's Report and Recommendation. In accordance with Local Rule 56.1, the defendants submitted in support of their motions for summary judgment a "concise statement of the material facts of record," as to which they contended there was no genuine issue to be tried. To the extent that the plaintiff contended that the court should consider other facts, or to the extent that the plaintiff believed that the facts submitted by defendants were contradicted, he had an obligation to submit his own statement of material facts "with page references to affidavits, depositions and other documentation." Local Rule 56.1.

Plaintiff submitted no such statement. Indeed, he explicitly confirmed in his memorandum that he was adopting the defendants' statement. Plaintiff's failure to submit a statement of material facts, and his confirmation that he was adopting defendants' statement, signified that the defendants' Joint Statement of Undisputed Material Facts contained *all* the facts and the *only* facts that the court was obliged to rely on in ruling on the defendants' motions.

Throughout this case plaintiff—despite being informed more than once of the effect of the provision—has acted as though Local Rule 56.1 did not exist. He has repeatedly attempted to use facts not found anywhere in the Joint Statement as a basis for his opposition to the motions for summary judgment.

As the First Circuit has noted, this fiddling with the record results in "district court judges being unfairly sandbagged by unadvertised factual issues...." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 931 (1st Cir.1983). An agreed statement of facts provides the definitive foundation for the court's ruling, not merely a frame for embroidery. Significantly, plaintiff's counsel—again, despite reminders of the effect of Local Rule 56.1—has never moved for leave to make a late filing of his own statement of material facts, or to expand the record in any way.

Having concluded this preamble, the court will now adopt the factual recitation of the Magistrate Judge, drawn directly from the Joint Statement adopted by all parties. The text, and footnotes 2 through 6, which follow, are quoted from the Report and Recommendation.

Unless otherwise indicated, the following background is taken directly from Defendants' Joint Statement of Material Facts not in Dispute.[2]

### A. Factual Background

At all relevant times, Pelletier and Defendants Mark Bond ("Bond"), Bruce McGarry ("McGarry") and Thomas Cryer ("Cryer") were employees of Hamilton Standard. Pelletier, Bond and McGarry were also members of the local bargaining unit of the International Association of Machinists & Aerospace Workers, AFL/CIO ("IAM")—Lodge 743 ("Lodge 743"). Pelletier had been a Lodge 743 shop steward, a shop committee member, and executive board member and an auditing committee member until April 28, 1994, when he lost his shop steward position in an election. Bond and McGarry were respectively President and Vice President of Lodge 743, Cryer was a Hamilton Standard em-

---

**2.** Plaintiff's nine-page memorandum in opposition to the motions for summary judgement does not specify any facts in dispute as required by L.R. 56.1. (*See* Plaintiff's Memo. in Opp'n to Defs.' Mot. for Summary Judgment at 1 ("the plaintiff ... essentially concurs with Defendants' Joint Statement of Material Facts not in dispute").) Accordingly, the Court has treated the facts as articulated by defendants as undisputed. See L.R. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for the purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

ployee, and Defendant George Kourpias ("Kourpias") was President of the IAM.[3] Lodge 743 was the exclusive collective bargaining agent for production and maintenance employees at Hamilton Standard, including Pelletier, Bond and McGarry. Hamilton Standard and Lodge 743 were parties to a collective bargaining agreement ("CBA") which was effective from May 4, 1992 through April 30, 1995. The CBA contains a non-discrimination clause (Article IV), a grievance procedure (Article VII) and provisions concerning the selection, assignment, distribution and recognition of shop stewards (Article VI).

During a meeting on April 8, 1993, Pelletier, acting as a shop steward, was representing another Hamilton Standard employee on a grievance. Cryer was representing Hamilton Standard. According to the operative complaint, during the meeting "Cryer made a series of derogatory statements about homosexuals" which Pelletier believed were directed toward him. (Comp., ¶ 10.) The complaint further alleges that sometime after the meeting, Pelletier complained to Hamilton Standard and Bond, as President of Lodge 743, "that he wanted something done" about Cryer's comments. (Id., ¶ ¶ 13, 14.)

On August 2, 1993, with regard to a separate matter, Pelletier, acting as a Lodge 743 auditor, brought allegations of what he believed to be financial irregularities in Lodge 743's financial books and records to Bond's attention. On November 4, 1993, Pelletier sent a letter to the IAM accusing Bond and McGarry of conduct unbecoming union officers and violations of the IAM constitution and Lodge 743 by-laws. In a March 1, 1994 letter, IAM General Vice President George Poulin ("Poulin") informed Pelletier that the IAM's investigation revealed no grounds for internal union charges against either Bond or McGarry. On that same date, Pelletier sent a second letter to the IAM accusing Bond, McGarry and another Lodge 743 officer of misappropriating funds and other violations of the IAM constitution and by-laws.

On March 29, 1994, Pelletier sent a telefacsimile to Poulin complaining about Bond and McGarry's alleged lack of leadership. On or about April 18, 1994, Pelletier sent yet another letter to the IAM, this time accusing Bond of conduct unbecoming a union officer for allegedly countersigning Lodge 743 checks in violation of the IAM constitution. In a letter dated April 28, 1994, the IAM responded to Pelletier's letters, indicating to him that he had the right to pursue formal charges by filing directly with Lodge 743. (*See* Defs. Hamilton Standard, Cryer, Bond and Kourpias' Joint Ex. List and Attached Exs. ("Def.'s Ex.") P, ¶ 5.)

On May 23 and 24, 1994, after losing the shop steward election, Pelletier wrote another letter to the IAM complaining about Bond. Pelletier accused Bond of preventing an honest election and thereby failing to perform his duties as Lodge President in violation of the IAM constitution and Lodge 743 by-laws. On June 16, 1994, Pelletier committed suicide.

## B. *Procedural Background*

On June 1, 1994, two weeks prior to his death, Pelletier filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") against Hamilton Standard, the IAM, Bond and McGarry, alleging that they had discriminated against him on the basis of his sexual orientation in violation of Conn. Gen.Stat. § 46a–81c (1995) ("section 46a–81c"). The CCHRO complaint and subsequent pleadings specifically mentioned the alleged comment by Cryer on April 8, 1993 as an incident of sexual orientation discrimination for which Hamilton Standard was liable. On October 25, 1994, Bogdahn, as administrator of Pelletier's estate, filed an amendment to the CCHRO complaint alleging that "Pelletier took his

---

**3.** On September 21, 1995, plaintiff voluntarily withdrew the IAM as a defendant pursuant to Fed.R.Civ.P. 41(a)(1)(i), apparently recognizing that by keeping in the IAM—which, for jurisdictional purposes, is a citizen of both Massachusetts and Connecticut—complete jurisdiction would have been lacking. On February 15,

1996, however, Plaintiff moved to vacate the September 21, 1995 stipulation of dismissal and substitute Kourpias, individually and as President of the IAM, as a defendant. That motion was allowed on March 6, 1996, without opposition.

own life ... as a direct and proximate result of Respondents' discrimination, sexual harassment, slander, negligent and intentional infliction of emotional distress." On July 11, 1995, Bogdahn filed the instant action. After several amendments, the operative complaint was docketed on March 6, 1996.[4] Throughout the complaint, Plaintiff variously alleges that Bond and McGarry commenced an organized campaign to replace Pelletier as a shop steward and remove him from the Lodge 743 auditing committee. The complaint also asserts that the conduct of Bond and McGarry during this "campaign"—coupled with Bond's alleged failure to corroborate Pelletier's allegations against Cryer and do "something" about Pelletier's complaint about Cryer's remarks—resulted in Pelletier allegedly becoming depressed and ultimately committing suicide. The complaint contends that the actions of Defendants constituted "a violation of the laws of the State of Connecticut, including but not limited to [section] 46a–81c." (Compl., ¶ 24; see also id., ¶ 39.)[5]

On or about September 21, 1996 three motions for summary judgement were filed—one by Hamilton Standard and Cryer, one by Bond and one by Kourpias.[6] Plaintiff filed a consolidated opposition to defendants' motions on November 29, 1996 and two reply briefs, one by Hamilton Standard and Cryer and one by Bond, were filed on December 23, 1996. Oral argument was heard on January 8, 1996. Report and Recommendation at 1–6.

## III. STANDARDS OF REVIEW

### A. De Novo Review

A dissatisfied litigant may obtain review of a report and recommendation on a disposi-tive motion issued by a magistrate judge by filing an objection in the district court. The district court applies a de novo standard of review, which does not require a new hearing. Rules for United States Magistrates in the United States District Court for the District of Massachusetts 3(b); see also Mathews v. Weber, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. See Paterson–Leitch v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990–91 (1st Cir.1988) (citing Fed.R.Civ.P. 72); see also 28 U.S.C. § 636(b)(1)(B).

### B. Summary Judgment

The court may allow a motion for summary judgment if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating that there is no issue regarding a material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. at 2552.

The test for summary judgment is rigorous. Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 934 (1st Cir. 1987) (vacating summary judgment entered for defendant shipping concern). The court

---

4. Previously, the complaint had been amended on August 14, 1995 and again on October 11, 1995.

5. On July 2, 1996, plaintiff answered Hamilton Standard's first set of interrogatories. In response to interrogatory number thirteen, which asked Plaintiff to identify "the laws of the state of Connecticut" he claims were violated by Hamilton Standard, Plaintiff referred, in essence, to section 46a–81c and "the common law." (Defs.' Ex. N at 10–11.) See discussion infra. In response to interrogatory number fourteen, Plain-tiff stated that the action against the IAM is "a hybrid 301 fair representation claim." Finally, in response to interrogatory number fifteen, Plaintiff claimed that Bond and the IAM violated the IAM constitution by some of their actions or inactions concerning the letters Pelletier sent to the IAM complaining about Bond.

6. On November 1, 1995, a Fed.R.Civ.P. 55(a) default notice was entered against McGarry. Accordingly, no dispositive motion has been filed by him.

must examine the record in the light most favorable to the non-moving party and "must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983). If a reasonable fact finder could return a verdict in favor of plaintiff, even if a verdict could equally easily be returned for the defendant, then summary judgment must be denied. *Mack v. Great Atl. & Pacific, Tea Co. Inc.*, 871 F.2d 179, 181 (1st Cir.1989). In making this rigorous analysis, the court is entitled to rely on the statements of material fact submitted, or agreed to, by counsel. Local Rule 56.1.

## IV. DISCUSSION

### A. The Plaintiff's Objection to the Report and Recommendation

The careful analysis of the plaintiff's claims set forth in the Report and Recommendation renders an extensive discussion here unnecessary. The claims offered under Conn. Stat. § 46a–81c, even assuming they may properly be asserted pursuant to this statute, display numerous fatal deficiencies. First, and most importantly, the plaintiff failed to satisfy the administrative prerequisites prior to bringing them. Second, the claims are untimely, in whole or part. Third, Cryer and Bond are not proper defendants, even supposing this statute applies, because they were not the plaintiff's decedent's "employer."

Moreover, at this stage, as the Report notes, it would simply be unfair to permit plaintiff to prosecute his suit under a separate statutory provision, Conn. Stat. 46a–60. In the underlying administrative proceeding, through three amended complaints, and in answers to interrogatories, this statute was never mentioned. Beyond this, even if plaintiff had not lost this claim through his failure to plead it, an action under 46a–60 would also suffer from the same fatal failure to satisfy administrative prerequisites as the claims under 46a–81c.

The Magistrate Judge was also correct in concluding that the plaintiff's common law claims largely lacked viability as a matter of law. Again, plaintiff's vague pleadings required generous efforts on the Magistrate Judge's part even to formulate these claims.

Plaintiff contends that the Magistrate Judge erred in concluding that the claim for intentional infliction of emotional distress against the defendant Bond, a union official, was preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), citing *Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25*, 430 U.S. 290, 302, 97 S.Ct. 1056, 1064–65, 51 L.Ed.2d 338 (1977). It is not necessary to address this issue because, as will be seen below, the facts of record in this case, even viewed in the light most favorable to the plaintiff, simply do not satisfy the elements of this common law cause of action as to either Bond or Cryer.

### B. The Defendants' Objections to the Report and Recommendation

#### 1. Intentional Infliction of Emotional Distress—the Facts

The confusion that may arise from counsel's failure to comply with Local Rule 56.1 was well exemplified by the Magistrate Judge's findings of fact in connection with the plaintiff's claim for intentional infliction of emotional distress.

The only facts regarding Cryer's alleged intentional infliction of emotional distress upon Pelletier contained in the Joint Statement and summarized by the Magistrate Judge, were that on one occasion, April 8, 1993, over a year before Pelletier committed suicide, Cryer "made a series of derogatory statements about homosexuals" that Pelletier believed were directed towards him. Bond, in the Joint Statement, is never alleged to have engaged in any homophobic conduct.

Out of a desire, perhaps, to give plaintiff the benefit of every doubt, Magistrate Judge Neiman carried his analysis of the claim against Cryer beyond the Joint Statement and the facts summarized in his Report, plunging into the record himself, personally reviewing the complaint, the plaintiff's answers to interrogatories and his submissions to the Connecticut Commission on Human Rights and Opportunities (CCHRO), to see if evidence of discriminatory conduct by Cryer,

**58**

albeit not properly offered by plaintiff's counsel, might be found.

■ The Magistrate Judge concluded (as it happened, incorrectly) that Cryer had made remarks reflecting prejudice against homosexuals on three occasions. In fact, two of the alleged statements—the derogatory comments on April 8, 1993 and a remark about "queers" in his neighborhood—were really one statement, supposedly uttered at the same time. A failure to comply with Local Rule 56.1 makes this kind of mistake, which plaintiff does not dispute, inevitable. The "third"—really the second and only other—prejudicial comment allegedly made by Cryer was a remark, made in Pelletier's presence but not to him, on an unspecified date, to the effect that another gay employee would prefer to sell "boy scout cookies over girl scout cookies." Report and Recommendation at 24.

No citation for this comment is contained in the Report, and it is not referred to in the Joint Statement, or even in plaintiff's memorandum. Apparently, this alleged fact was contained in an amended complaint presented to the CCHRO by Pelletier's estate after his death. *Defendants Hamilton Standard and Cryer's Partial Objection* (Dkt. No. 63) at 6.

This second comment may not be considered in reviewing the sufficiency of the defendants' motions for *summary* judgment, for two irrebuttable reasons. First, as noted, the comment was not contained in the Joint Statement. Second, plaintiff's counsel, time and again, both in writing and orally, contended that he was relying *only* on the April 8, 1993 statement of Cryer in pressing his claims. He cannot change directions now.

Moreover, as will be seen below, even if this second statement were considered, it is simply not enough to provide a basis for a claim of intentional infliction of emotional distress against Cryer.

With regard to Bond, no facts at all are contained in the Joint Statement that would provide any conceivable foundation for a claim of intentional infliction of emotional distress upon Pelletier. Here, the Magistrate Judge did not feel obliged to dive into the record in search of facts that might support a claim against Bond. Plaintiff's counsel has finally attempted to specify some discriminatory behavior by Bond in his memorandum in support of his objections to the Magistrate Judge's Report and Recommendation. However, he fails to provide the court any specific citations to the Record beyond a reference to "other instances of personal antipathy" that the court might find in plaintiff's answers to interrogatories. This is far too little, way too late.

## 2. *Intentional Infliction of Emotional Distress—The Law*

■ Connecticut law recognizes four factors to determine whether liability exists on a claim for intentional infliction of emotional distress. The elements that must be established are: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe." *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986) (quoting *Hiers v. Cohen,* 31 Conn.Supp. 305, 329 A.2d 609 (1973); 1 Restatement (Second) Torts § 46; *Murray v. Bridgeport Hosp.,* 40 Conn.Supp. 56, 480 A.2d 610 (1984)). "[T]he rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Id.* at 254 n. 5, 510 A.2d 1337 (quoting Prosser & Keeton, Torts (5th Ed.) § 12, p. 60).

[E]xtreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.

*Mellaly v. Eastman Kodak Co.*, 42 Conn. Supp. 17, 20, 597 A.2d 846 (1991) (quoting 1 Restatement (Second), Torts § 46, comment (f)).

> Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either [the second requirement of the rule, that the conduct was extreme and outrageous and the fourth element, that the emotional distress was severe] is a question, in the first instance for [the] court. Only where reasonable minds can differ does it become and issue for the jury.

*Id.* at 18, 597 A.2d 846. (citing *Reed v. Signode Corp.*, 652 F.Supp. 129, 137 (D.Conn. 1986)).

██ Under Connecticut law, conduct by a defendant that displays bad manners or is merely insulting or hurts ones' feelings is not sufficient to base an action for intentional infliction of emotional distress. *Scandura v. Friendly Ice Cream Corp.*, No. CV. 930529109S, 1996 WL 409337 (Conn.Super.Jun.26, 1996).

██ The court will analyze the statements made in this case utilizing the factors set forth in *Petyan*.

The first factor is that "the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct." *Petyan*, 200 Conn. at 253, 510 A.2d 1337. This factor weighs in favor of Pelletier as to his claim against Cryer. Cryer knew of Pelletier's sexual orientation, and a jury could find that his conduct on April 8, 1993 was based on that knowledge. A reasonable jury could conclude that Cryer's remarks were intended to cause Pelletier emotional distress. On the other hand, no evidence of similar remarks by Bond exists in the agreed record.

The second factor, whether the conduct was extreme and outrageous, weighs heavily in favor of both defendants. There were only two statements alleged by Cryer, none by Bond. It cannot be said that these statements made in the presence of Pelletier could be deemed "extreme and outrageous." To say this is not to condone the remarks. They were certainly both discriminatory, and

highly offensive. However, they are not sufficiently egregious to satisfy the "extreme and outrageous" element of plaintiff's claim. *Mellaly*, 42 Conn.Supp. at 20, 597 A.2d 846.

Factor three, whether the defendant's conduct was the cause of the plaintiff's distress, weighs in favor of defendants as well. A reasonable jury simply could not conclude that the comments made by defendant Cryer over a year before Pelletier took his life were sufficiently hurtful in themselves to have caused him such severe emotional distress.

Factor four is whether "the emotional distress that was sustained by the plaintiff was severe." *Petyan*, 200 Conn. at 253, 510 A.2d 1337. Tragically, there is no question that the suffering of the plaintiff's decedent, for whatever reason, was severe. This factor favors the plaintiff.

To repeat, discrimination against homosexuals is both despicable and illegal; it should not and must not be tolerated. But the evil of the defendants' alleged misconduct does not relieve plaintiff's attorney of the responsibility to prosecute his case in accordance with clearly established rules. Applying those rules to this case, as to others, the court must conclude that plaintiff's counsel failed to present sufficient facts to justify any reasonable jury in concluding that either Bond or Cryer intentionally inflicted emotional distress on Pelletier.

Plaintiff has not opposed the motion for summary judgment of the defendant Kourpias, and that will be allowed.

## V. CONCLUSION

For the reasons detailed above, the court hereby ADOPTS the Magistrate Judge's Report and Recommendation, in part. The defendants' Motions for Summary Judgment will be ALLOWED in their entirety. All that now remains is the plaintiff's claim against the defaulted defendant McGarry. The case will be transferred to the Magistrate Judge to conduct a status conference to determine the nature of any future proceedings against him.