**UNITED STATES of America, Plaintiff,**

**v.**

**Manuel GONZALEZ, Defendant.**

**No. 3:96CR137 (RNC).**

United States District Court,
D. Connecticut.

Feb. 5, 1997.

Ronald T. Murphy and John Jay Pavano, Murphy & Willcutts, Hartford, CT, for Manuel Gonzalez.

Ronald Scott Apter, John A. Danaher, III, U.S. Attorney's Office, Hartford, CT, and Christopher F. Droney, U.S. Attorney's Office, New Haven, CT, for the U.S.

### *RULING AND ORDER ON MOTION TO SUPPRESS*

CHATIGNY, District Judge.

This case raises questions concerning the authority of law enforcement officers to search the passenger compartment of a motor vehicle following a traffic stop. Defendant Manuel Gonzales has been indicted for possession of a weapon by a felon in violation of 18 U.S.C. § 922(g)(1). The indictment arises from his arrest by Hartford police for possession of a weapon in a motor vehicle. He moves to suppress the weapon on the ground that the officer who found it was searching the vehicle for controlled substances without probable cause. He also moves to suppress an incriminating statement he made to the officer concerning his ownership of the gun on the ground that the statement was obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). I conclude that the officer's search of the passenger compartment of the vehicle was within the scope of the protective search exception to the warrant requirement recognized in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and that the defendant's statement was not a product of interrogation. Accordingly, the motion to suppress is denied.

### 1. *Background*

The defendant was a front seat passenger in a car stopped for speeding at about 2:00 a.m. in a high crime area by Hartford police officer Charles B. Cochran. The only other

occupant of the car was the driver. After stopping the car, Cochran noticed what appeared to him to be furtive movements on the part of both occupants: the driver appeared to be tucking something under his shirt and the defendant appeared to be placing something under the passenger side of the front seat. Cochran called for assistance.

Another officer named Perone responded to Cochran's call. Shortly after arriving at the scene, Perone told Cochran that he recognized the driver of the car. Perone stated that he had previously arrested the driver more than once on drug-related charges.

Cochran ordered both occupants out of the car. He patted down the driver for weapons and found $1,000 in cash in the driver's pants pocket. He then patted down the defendant. Finding no weapon on the defendant's person, he placed his hand under the passenger side of the car's front seat and found the weapon in question, a 9 millimeter pistol with 12 rounds of ammunition in the magazine.

After confiscating the weapon, Cochran announced that he was arresting both the driver and the defendant on weapons charges. On hearing Cochran make that statement, the defendant said, "Why are you arresting us both? The weapon is mine."

### 2. *Discussion*

#### *The motion to suppress the weapon*

The defendant moves to suppress the pistol on the ground that Cochran found it while engaged in an illegal search for drugs. His contention that Cochran was looking for drugs, not weapons, is based primarily on an incident report Cochran prepared shortly after the arrest, in which Cochran stated: "the undersigned believed there to be narcotics/controlled substances in the [motor vehicle]."

The Government does not attempt to justify Cochran's actions on the ground that he had probable cause to search the car for drugs. Rather, the Government argues that Cochran was entitled to check beneath the front seat of the car for a weapon pursuant to the protective search exception of *Michigan v. Long.*

The Court's decision in *Long* does not permit law enforcement officers to search the passenger compartment of a car just because the car has been properly stopped in connection with a traffic violation. *Long* permits a search of the passenger compartment, limited to areas where a weapon could be hidden, "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences drawn from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and . . . may gain immediate control of weapons." 463 U.S. at 1049, 103 S.Ct. at 3481 (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968)).

There is no dispute that the facts known to Cochran, together with rational inferences that an experienced police officer could draw from those facts, would reasonably warrant an officer in believing that the occupants of the car posed a danger to his safety. The car was stopped for speeding late at night in a high crime area known for drug trafficking. Cochran saw both occupants make furtive movements and thought both of them were attempting to conceal objects from his view. The driver, who was known to have a criminal history involving illegal drugs, was carrying $1,000 in cash, a suspiciously large sum. A prudent officer in the circumstances could reasonably believe that the driver and the defendant were armed and dangerous.

There is also no dispute that the Supreme Court's decision in *Long* permits a protective search of a car while its occupants are being detained outside, as happened here. Before Cochran placed his hand under the front seat of the car, he did not have grounds to take the driver and the defendant into custody. If permitted to reenter the car, they would have access to any weapons inside. Under *Long,* such post-detention access is sufficient to justify a protective search.[1]

The defendant argues that Cochran's intrusion into the vehicle was improper, not-

---

1. This aspect of *Long* has been criticized. *See* Wayne R. LaFave, *Search and Seizure* § 9.5(e), at 287–96 (3d ed. 1996). However, there is no argument in this case that Cochran was not entitled to check the car for weapons.

withstanding the fact that a reasonable police officer would have been justified in conducting a protective search in the circumstances of this case, on the ground that Cochran did not actually fear for his safety and was really looking for illegal drugs. The defendant's assertions about Cochran's state of mind raise two questions: whether *Long* requires an officer to have a subjective belief that persons with whom he is dealing are armed and dangerous and, in any event, whether a search that otherwise would be lawful under *Long* is rendered invalid if the officer had another motive besides protecting himself and others.[2]

The first question has been addressed by a number of Circuits with varying results. The First and Ninth Circuits have stated that an officer conducting a *Long*-type search must have a subjective fear that is objectively reasonable. *See United States v. Lott*, 870 F.2d 778, 783–84 (1st Cir.1989); *United States v. Prim*, 698 F.2d 972, 975 (9th Cir.1983). On the other hand, the Fifth and Eighth Circuits apply a standard of objective reasonableness that does not require the officer to actually fear for his safety. *See United States v. Menard*, 95 F.3d 9, 11 (8th Cir.1996); *United States v. Baker*, 47 F.3d 691, 694 (5th Cir.1995). There appear to be no cases in the Second Circuit addressing this particular point.

An objective standard would seem to be the correct test for determining whether an officer was entitled to conduct the type of search permitted by *Long* because that is the standard used to determine the reasonableness of an officer's actions under *Terry*. Certiorari was granted in *Long* "to consider the important question of the authority of a police officer to protect himself by conducting a *Terry*-type search of the passenger compartment of a motor vehicle during the lawful investigatory stop of the occupant of the vehicle." *Long*, 463 U.S. at 1037, 103 S.Ct. at 3474. The Court upheld the search in *Long* because the police "had reason to believe that the vehicle contained weapons potentially dangerous to officers." *Id.* at

1035, 103 S.Ct. at 3473. The Court's holding permitting officers to conduct a protective search of a vehicle incorporates the *Terry* standard. *Id.* at 1049–50, 103 S.Ct. at 3480–81.

■ Even if the appropriate standard for testing the validity of a *Long*-type search includes a subjective component, suppression of the weapon confiscated by Cochran is not warranted by the evidence. Cochran has testified that he wanted to check the area beneath the passenger side of the front seat because he was concerned for his safety. His search did not exceed the bounds of a protective search. The record establishes that he checked the area where the weapon was found after patting down both the driver and the defendant for weapons. His testimony that he was concerned about his safety is corroborated by his incident report, which states that he found the pistol while engaged in a "wingspan search." The phrase "wingspan search," as used in the incident report, implies a concern for safety.

Cochran's statement in the incident report that he believed the car contained narcotics is not inconsistent with his testimony that he feared he could be shot. If anything, that statement lends credence to Cochran's testimony. Police officers know from experience that people who sell illegal drugs often carry loaded weapons.

Turning to the second question, the Supreme Court has recently emphasized that a police officer's subjective intent does not make otherwise lawful conduct unconstitutional. *Ohio v. Robinette*, —— U.S. ——, ——–——, 117 S.Ct. 417, 420–21, 136 L.Ed.2d 347 (1996) ("the subjective intentions of the police officer did not make the continued detention of respondent illegal under the fourth amendment"); *Whren v. United States*, 517 U.S. ——, ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) ("'the fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's actions does not invalidate the action taken as long as the circumstances, viewed

**2.** The first question relates to Cochran's authority to conduct a *Long*-type search. The second question relates to whether Cochran's intent can

be taken into account to exclude evidence that otherwise would be deemed admissible.

 

objectively, justify that action.' ... Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis.") (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)).[3]

■ These recent Supreme Court cases effectively foreclose the defendant's argument that Cochran's search was invalid because his motive was to find illegal drugs. *Robinette* holds that an officer who has probable cause to stop a car for speeding may detain the driver and order him out of the car even after he has determined in his own mind that he is not going to give the driver a ticket. *Whren* holds that a traffic stop based on probable cause is reasonable under the fourth amendment even if the officer uses the stop as a pretext to pursue a different law enforcement objective. It follows from these cases that if an officer stops a car and detains the motorist in circumstances permitting a protective search of the passenger compartment, a weapon found in the course of the search may be confiscated and will be admissible in evidence regardless of whether the officer was motivated to conduct the search because he believed it would turn up illegal drugs.

*The motion to suppress the statement*

■ The defendant's motion to suppress his incriminating statement is without merit. The protections afforded by *Miranda* extend only to suspects in custody who are subjected to "interrogation," meaning "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). The defendant admitted the pistol was his, not in response to questioning, but spontaneously in reaction to Cochran's statement that both the defendant and his companion were being arrested on weapons charges. There is no evidence that Cochran's statement was a psy-chological ploy designed to elicit an incriminating response.

### 3. *Conclusion*

For the foregoing reasons, the defendant's motion to suppress is hereby denied.

So ordered.

---

3. The Second Circuit has stated that "the test is what could lawfully be done, not what the policemen thought the source of their power to be." *United States v. Ochs*, 595 F.2d 1247 (2d Cir. 1979) (Friendly, J.). The court made that statement in a case challenging a search of a briefcase found in an impounded vehicle. The district court upheld the search of the briefcase as an inventory search, which was the theory relied on by the police. Affirming, the court stated that the briefcase was properly searched based on probable cause. Though not a pretext case, *Ochs's* focus on "what could lawfully be done" suggests that to suppress the weapon in this case merely because Cochran believed the car contained illegal drugs would be improper.