Kenneth SMITH Plaintiff

v.

CITY OF NEW HAVEN, Officer Andrea Papa, Officer Lisa Wexler, Sargent R. Miller and Officer Christopher Perrone, in their individual and capacities, Defendants

No. 3:99–CV–157 (EBB).

United States District Court, D. Connecticut.

Aug. 20, 2001.

W. Martyn Philpot, Jr., Laura Lee A. Dorflinger, Marc L. Glenn, Law Offices of W. Martyn Philpot, Jr., LLC, New Haven, CT, for Plaintiff.

Thomas W. Ude, Jr., Office of Corp. Counsel, New Haven, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ELLEN BREE BURNS, Senior District Judge.

### INTRODUCTION

Plaintiff Kenneth Smith ("Plaintiff" or "Smith") brings this four-count Complaint against the City of New Haven, Officer Andrea Papa ("Papa"), Officer Lisa Wexler ("Wexler"), Sergeant R. Miller ("Muller")[1] and Officer Christopher Perrone ("Perrone"). The first count alleges various violations of 42 U.S.C. Section 1983, including illegal practices and/or customs of the City of New Haven and, as to the officers, violations of Plaintiff's right to be free from unreasonable seizure, freedom from arrest and prosecution without probable cause, freedom from the use of unreasonable force, and denial of due process of law. The second, third and fourth counts are all state law claims, including assault and battery, false imprisonment and negligent and/or intentional infliction of emotional distress.

Defendants now move for summary judgment on all counts in the Second Amended Complaint.

1. Sergeant Muller is erroneously referred to as Sargent R. Miller in the Second Amended Complaint.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are distilled from the Amended Complaint, the parties moving papers and exhibits thereto.

On November 11, 1997, Smith was a corrections officer at the Corrigan Correctional Center. His shift was from 4:00 p.m. to 12:00 a.m. After a short period of exercise, and a brief conversation with his colleagues, Plaintiff set out for his home, which was at 62 Wolcott Road in New Haven.

At approximately 2:00 a.m., Defendants Wexler and Papa, New Haven police officers, were on duty in the area of Blatchtley Avenue and Exchange Street. That area is one where prostitution and drug trafficking were ongoing problems, which facts were known to the officers.

At that time and place, the officers noted a green Lincoln automobile with tinted windows. The windows were so dark that neither officer could determine the race or gender of the driver. Because the car appeared to be circling the area, Wexler checked the license plate and determined it was registered to a residence in Trumbull. Wexler decided to stop the car, as she believed that the dark tint was a motor vehicle violation. Papa joined her as backup in this stop.

Smith was the driver of the car. Upon request, Wexler received his license and car registration. The car was registered to a woman in Trumbull whom Smith identified as his fiancee and the mother of his child.

Wexler asked Smith if there were any drugs in the car and inasmuch as Wexler

could tell from his uniform that Smith was a corrections officer, she asked him repeatedly if there was a gun in the car. He answered "no" each time.

Wexler advised Smith to shut the engine off and get out of the vehicle. He initially refused and put the car in motion. He also continuously refused to permit a search of his vehicle. For her own safety and that of Papa, Wexler drew her pistol and aimed it at Plaintiff. He stated in his statement to the New Haven Police Department that, after this happened, he sat looking straight forward with both hands on the steering wheel.

Wexler then called her supervisor to see if Smith would obey him and diffuse the situation. By this time, Wexler had holstered her pistol. Muller arrived a few minutes later and was advised by Wexler and Papa as to the events which had transpired. Because she had made a call for back-up, Perrone and one Officer Cavalier also came to her aid.

Smith refused to get out of the car for Muller, who then reached in and pulled him out by his shoulder. Smith was then handcuffed, with some effort, by Perrone and Muller. The effort was complicated by the fact that, when Smith exited the car, his pants fell down to his knees, and in the process, his pants fell further off. The officers aided him in pulling them up to his waist and securing them.

In her averred report of the incident, Papa stated that she, Muller and Perrone began to struggle with Smith to get him into the patrol wagon, in order that he be brought to the detention center to be booked on a charge of interfering with a police officer. Although the accounts differ, the officers testified that, because Smith was struggling with them, they placed him on the ground for the officers' safety. Smith testified that they pushed him on the ground, where Muller used a racial epithet and spit in his face, a claim

Muller vehemently denied. The other three officers averred that they did not hear or see this alleged incident.

In the meantime, Muller advised Wexler to search the front seat and passenger compartment for a weapon. She immediately found a loaded .380 semi-automatic handgun under the driver's seat. Although Smith claimed he had a permit for the weapon, Wexler believed that the permit was invalid for failure to report an address change. Consequently, he was arrested for having a weapon in a motor vehicle, as well as interfering with a police officer. Wexler also issued Smith a ticket due to her belief that the tinted windows violated a Connecticut statute.

In December of 1997, the charges against Smith were nolled and subsequently dismissed thirteen months later.

### LEGAL ANALYSIS

#### I. The Standard of Review

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). See also Anderson v. Liberty Lobby, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322–23, 106 S.Ct. 2548. Ac-

cord, *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d. Cir.1995)(movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

## II. *The Standard As Applied*

### A. *Qualified Immunity As to the Police Officers*

 The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McEvoy v. Spencer,* 124 F.3d 92, 97, (2d Cir.1997) *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is "clearly established" when "[t]he contours of the right [are] ... sufficiently clear that a reasonable official would understand that what he is doing violates that right ... [T]he unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *See, e.g. Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law."); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (officials are immune unless "the law clearly proscribed the actions they took.")

In determining whether a particular right was clearly established at the time defendants acted, the Second Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). *See Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989), *citing Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

Inasmuch as the majority of Plaintiff's claims fall under the Fourth Amendment, the analysis will be applied to this investigative stop according to the parameters of that constitutional right.[2] The Supreme

---

**2.** Although Plaintiff also claims violation of his substantive and due process rights, the Court deems them abandoned as not briefed in Plaintiff's reply brief. In any event, the

Court has recently emphasized that a police officer's subjective intent does not make otherwise lawful conduct unconstitutional. *Ohio v. Robinette,* 519 U.S. 33, 38, 117 S.Ct. 417, 136 L.Ed.2d 347(1996)("the subjective intentions of the police officer did not make the continued detention of respondent illegal under the Fourth Amendment."). *Robinette* holds that an officer who has probable cause to stop a car for a traffic violation may detain the driver and order him out of the car even after the officer has determined in his own mind that he is not going to give the defendant a traffic ticket.

The Second Circuit, in analyzing issues surrounding the constitutionality of searches and seizures, has likewise adopted a wholly objective "authorization test", which states that "so long as the police are doing no more than they are legally permitted and objectively authorized to do," their actions are constitutional. *United States v. Scopo,* 19 F.3d 777, 783–84 (2d Cir.1994). "We, too, hold that where the arresting officer had probable cause to believe a traffic violation occurred or was occurring in the officer's presence ... the resulting arrest will not violate the fourth amendment." *Id.* at 784.

■ An application of these principles must result in a finding that the four officers are qualifiedly immune for the investigative traffic stop of Smith and for detaining him once he became completely uncooperative. Further, as he refused to exit the vehicle and, was, accordingly, taken from the car by force, a search of the car for a gun, for the officers' immediate safety, was more than justified. That a gun was found under the driver's seat,

within Smith's reach, with a bullet in the chamber, was all the more justification for this reasonable seizure and arrest for interfering with a police officer and carrying a loaded weapon with a permit which was arguably illegal.

■ There was also nothing unreasonable about Officer Wexler drawing her gun, due to Plaintiff's recalcitrance. There is no dispute that the facts known to the officers, and the situation they faced, together with the rational inferences that an experienced police officer could draw from those facts, would reasonably warrant an officer in believing the occupant could be dangerous to her safety and that of Officer Papa. "[I]f an officer stops a car and detains the motorist in circumstances permitting a protective search of the passenger compartment, a weapon found in the course of the search may be confiscated...." *U.S. v. Gonzalez,* 954 F.Supp. 48, 51 (D.Conn.1997). The Court finds that the officers, fearing for their safety due to Plaintiff's conduct, had a constitutional right to search his passenger compartment and/or front seat for weapons.

■ The Court also holds that no excessive force was used in removing Smith from his vehicle. In *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir.1995), the Court of Appeals, in analyzing a similar situation, stated:

Because [the plaintiff] would not leave the car on her own, [the officer] determined that he would have to remove her forcibly. He wrapped his arm around her neck, shoulder and arm, and pulled her from the car. The intrusion on [the plaintiff's] Fourth Amendment rights, if

Supreme Court has stated that "in the context of an arrest or an investigatory stop of a free citizen ... [such a claim] is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their per-

sons ... against unreasonable ... seizures.' " *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(rejecting substantive due process claim in connection with arrest). Summary judgment is, therefore, granted on the due process claims.

any, was extremely limited. It was objectively reasonable for [the officer] to believe that in pulling the plaintiff from the car to effect her arrest, he was not infringing on her Fourth Amendment rights. Under the circumstances described above, no jury could find that it was objectively unreasonable for the officers to believe that the force used or remove [the plaintiff] from the car was not excessive.

The force used in this case was *de minimus*. Muller simply reached into the car and pulled Smith from his vehicle in order to make a lawful arrest. Even if, as Smith alleges, Muller tore his shirt, this still does not make Muller's actions objectively unreasonable.

■ However, the Court finds that there exists a genuine issue of material fact for the jury to decide as to whether Wexler, Papa and Muller used excessive force in bringing Smith to the police car to await the patrol wagon. According to Smith, Wexler and Papa pushed and pulled him until he told them they were going to fall if they did not give him directions as to what to do. Smith claims he asked the officers to be able to bend over to enter the patrol wagon, which the officers deny. At that point, Smith testified that he was forced to the ground, face down by Wexler, Papa and Muller. He further testified that Papa sat on his back, which Papa admits. What she denies is making the statement "I'm perfectly comfortable, I can stay here all night", which Smith averred she said. Once on the ground, Smith reported that Muller used curses, racial epithets and spit in his face. Muller denies this. Due to the complete contradictory reports as to these allegations, the Court finds that this instance of potential excessive force is for the jury. The only Officer who enjoys qualified immunity from this charge is Perrone, who Smith averred merely placed his arm on Smith as he escorted Smith to the police car.

■ The *Jermosen* test is also support for the grant of qualified immunity for the allegations of Fourth Amendment violations, save the excessive force claim charge stated above. First, the rights under the Fourth Amendment were known by these officers with "reasonable specificity." Second, it is beyond cavil that the decisional law of the Supreme Court and the Second Circuit support Fourth Amendment rights, although rarely finding violations of that Amendment, as is made clearly in this Ruling, save one. Finally, there can be no doubt that the actions of any of these police officers would ever have led them to reasonably believe that their conduct of stopping Smith's vehicle, forcibly removing him from the car and handcuffing him was unlawful. The same cannot be said of their conduct in taking Smith to the patrol car, save for the conduct of Perrone. *Jermosen*, 945 F.2d at 550.

■ Finally, in contradistinction to his claim, the arrest of Plaintiff was supported by probable cause. Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant person of reasonable caution that an offense has been committed by the person to be arrested." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir.1997), *quoting Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). Wexler and Papa noted what they believed to be suspicious behavior on the part of Smith, as he circled the block several times. Wexler further believed that the dark tint on his windows was in violation of Connecticut law. His conduct after he was stopped by the police was also in violation of Connecticut law.

■ Under Connecticut law, a person is guilty of interfering with an officer "when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties." Conn.Gen. Stat. § 53a–167a(a). That law prohibits any action—including "verbal conduct as well as physical conduct"—that amounts to "meddling in or hampering the activities of the police in the performance of their duties." *State v. Williams*, 205 Conn. 456, 471, 534 A.2d 230 (1987). By refusing to shut off his car engine, by moving it without permission, by refusing to exit his vehicle, by refusing to cooperate in entering the patrol wagon, it is beyond doubt that Smith committed the crime of interfering with police officers in the performance of their duties. A person is not justified in interfering with an arrest by a reasonably identified police officer, even if the arrest is later determined to be illegal. *State v. Privitera*, 1 Conn.App. 709, 719, 476 A.2d 605 (1984). Accordingly, the Court hold that Smith's arrest was supported by ample probable cause.

Thus, the Court holds that the four police officers are worthy of qualified immunity from Smith's claim of false arrest, lack of probable cause and excessive force in removing Smith from the vehicle. Wexler, Papa and Muller are not granted qualified immunity on the charge of excessive force in escorting Smith to the patrol car.

## B. *Municipal Liability*

■ A municipality is subject to liability for the unconstitutional acts of its employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Such liability cannot result from a theory of respondeat superior; rather it can be imposed only if the acts in question were carried out in execution of a government's policy or custom. *Id.* at 694, 98 S.Ct. 2018; *see also Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992).

■ First, inasmuch as the Defendant police officers have been held to be qualifiedly immune for their actions, the City of New Haven cannot be held liable for the "unconstitutional" acts of these officers.

■ Secondly, the sworn affidavit of Chief of the Department of Police Service Wearing, unchallenged by Plaintiff, makes it clear that New Haven (the "City") does not have custom or policy of racial profiling. Nor does the City have a practice or policy of using excessive force, or condone same. The City does not have a policy or practice of having its officers arrest individuals, or have them prosecuted without probable cause. The City does not have a policy or practice of having its police officers detain individuals without reasonable suspicion that the individual has violated the law. Finally, the City does not have a policy or practice of having its officers violate the constitutional rights of its citizens, nor would it condone same.

The Court believes that it would be an insurmountable barrier for Smith to produce admissible evidence on his claims against the City. Accordingly, he can produce no evidence on which he would bear the burden at trial. Accordingly, summary judgment is granted in favor the City on the municipality claims.

## C. Assault and Battery

■ Under Connecticut law, "[a]n assault has been defined as any attempt with force or violence to do corporeal offence to another coupled with the apparent ability to complete the act ... Connecticut ... [however], ... has discarded the classical definition of an assault and the word 'assault' is often used when in truth 'battery' would be more accurate." D. Wright, J. Fitzgerald and W. Ankerman, *Connecticut Law of Torts* (3rd.ed.1991), Section 6, p. 8. "A battery is a completed assault. Battery has been defined as any touching

of the person in rudeness or in anger." *Id.,* at 10. Thus, the evidence that supports the possible claim of excessive force on the part of Wexler, Papa and Muller mandates that this question go to the jury as to those three officers.

## D. False Imprisonment

 Each of the officers is, however, qualifiedly immune from the claim of false imprisonment. Connecticut courts have defined false imprisonment or false arrest as the **"unlawful** restraint by one person of the physical liberty of another." *LoSacco v. Young,* 20 Conn.App. 6, 19, 564 A.2d 610 (Conn.App), *cert. denied,* 213 Conn. 808, 568 A.2d 793 (1989) (citations omitted, emphasis added). Inasmuch as this Court has found that probable cause existed to arrest Smith under the Fourth Amendment, this claim must fail.

## E. Intentional Infliction of Emotional Distress

 In order to succeed on a claim for intentional infliction of emotional distress, Plaintiff must establish the following: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Appleton v. Stonington Bd. of Ed.,* 254 Conn. 205, 210, 757 A.2d 1059 (2000), *citing Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). In order to state a cognizable cause of action, Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to

support them. *See Meyers v. Bunker Ramo Corp.,* 1992 WL 88166, at *8, 1992 U.S. Dist. LEXIS 5336, at *26 (D.Conn. 1992). Because this Court finds that Defendants' alleged conduct was not "extreme and outrageous," the other three elements will not be addressed.

 Whether Defendants' conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the Court. *See Johnson v. Chesebrough–Pond's USA Co.,* 918 F.Supp. 543, 552 (D.Conn.1996), *aff'd,* 104 F.3d 355 (2d Cir.1996), *citing Mellaly v. Eastman Kodak Co.,* 42 Conn. Supp. 17, 18, 597 A.2d 846 (Conn.Super.Ct.1991). Only where "reasonable minds differ," does it become a question for the jury. *Reed v. Signode Corp.,* 652 F.Supp. 129, 137 (D.Conn.1986); *see also Restatement (Second) of Torts* § 46, cmt. (h) (1965). The general rule "is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Mellaly,* 42 Conn. Supp. at 19–20, 597 A.2d 846, *quoting* W. Prosser & W. Keeton, *Torts* § 12, at 60 (5th ed.1984);*see also Restatement (Second) of Torts* § 46, cmt. (d) (1965) ("Liability has been found only where the conduct had been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.")[3] "[M]ere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." *Brown v. Ellis,* 40 Conn.Supp. 165, 167, 484 A.2d 944 (Conn.Super.Ct.1984).

**3.** "In interpreting what constitutes "extreme and outrageous" conduct, Connecticut courts have relied on the Restatement (Second) of Torts § 46, comment (d) (1965)...." *Thompson v. Service Merchandise, Inc.,* 1998 WL

559735, at *1, 1998 U.S. Dist. LEXIS 13669, at *4 (D.Conn.1998). *See also Appleton,* 254 Conn. at 210, 757 A.2d 1059; *Petyan,* 200 Conn. at 254, 510 A.2d 1337.

In the present case, Plaintiff alleges that Defendants actions were extreme and outrageous due to the manner in which he was treated.

Courts in Connecticut have been reluctant to allow a claim for intentional infliction of emotional distress. *See, e.g., Appleton*, 254 Conn. at 211, 757 A.2d 1059 (finding allegations that school officials made derogatory comments concerning plaintiff's work performance and his ability to read, in front of other employees, contacted plaintiff's daughter to recommend that plaintiff take some time off because he was acting erratically, and arranged to have him escorted by police off of school property insufficiently extreme or outrageous to state a cause of action); *Emanuele v. Baccaccio & Susanin*, 1994 WL 702923, at *2, 1994 Conn.Super. LEXIS 3156, at *6 (Conn.Super.Ct. Apr. 10, 1992) (holding conduct not extreme and outrageous where at-will employee alleged her employer made false accusations regarding her work performance, and used coercion, threats and intimidation to force her to sign a document against her will, all for the purpose of depriving her of benefits and compensation); *Rock v. Mott Metallurgical Corp.*, 2001 WL 100307, at * 5–8, 2001 Conn.Super. LEXIS 207, at *13–21 (Conn.Super.Ct. Jan. 10, 2001) (granting defendant's motion for summary judgment where plaintiff alleged that she was ordered to lift and carry heavy objects beyond her ability, was required to work without being supplied the necessary resources, was transferred to a work station without a chair or desk, was called names, and was falsely accused of not finishing her work, because in totality the acts were "less than 'extreme' and 'outrageous' in nature").

Similarly, federal district courts in the Second Circuit have interpreted the qualification of extreme and outrageous strictly. *See, e.g., Reed v. Signode Corporation*, 652 F.Supp. 129, 137 (D.Conn.1986) (holding conduct not extreme and outrageous where a uniform company policy that forbade leaves of absence was applied to an employee seeking a leave to undergo chemotherapy treatments for cancer); *Lopez–Salerno v. Hartford Fire Ins.*, 1997 WL 766890, at *6, 1997 U.S. Dist. LEXIS 19724, at *19 (D.Conn. Dec. 8, 1997) (granting motion to dismiss where plaintiff alleged she was terminated so that defendant could avoid giving her long-term disability benefits); *Thompson*, 1998 WL 559735, at *1, 1998 U.S. Dist. LEXIS 13669, at *2–3 (granting motion for summary judgment and finding that allegations made by plaintiff of employer downgrading her race, removing her responsibilities in order to undermine her authority, and failing to provide adequate supervision and sufficient staff to do her job, did not constitute extreme and outrageous conduct).

Applying the appropriate stringent standards in light of such precedence, the Court finds that Defendant's conduct as alleged in the Complaint did not exceed all bounds of decency and is not "extreme and outrageous". Hence, summary judgment is granted on this claim.

### F. Negligent Infliction of Emotional Distress

In order to establish a cause of action for negligent infliction of emotional distress, the Plaintiff must prove that Defendant should have: (1) realized that its conduct involved an unreasonable risk of causing distress to Plaintiff; and (2) realized that the distress, if caused, might result in illness or bodily harm. *See Barrett v. Danbury Hospital*, 232 Conn. 242, 260–61, 654 A.2d 748 (1995). As the Court has already noted, several times, the conduct of the officers, save the escorting of Smith to the patrol car, were justified as a

matter of Constitutional law. Although Plaintiff may have been distressed at the treatment he received, there existed no unreasonable risk of causing such harm. Further, the only alleged physical injuries were sore wrists from the handcuffs. No officers could believe that such a slight injury would cause bodily harm within the tort of negligent infliction of emotional distress. Thus, summary judgment is granted on this Count also.

## CONCLUSION

For each of the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 25] is hereby GRANTED IN PART AND DENIED IN PART.

SO ORDERED